**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **LAURA SENNETT** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 1:09-cv-1063** |
| | ) | |
| **UNITED STATES DEPARTMENT** | ) | |
| **OF JUSTICE,** | ) | |
| | ) | |
| **ERIC HOLDER, in his official capacity** | ) | |
| **as Attorney General of the United States,** | ) | |
| | ) | |
| **FEDERAL BUREAU OF** | ) | |
| **INVESTIGATION, JOINT** | ) | |
| **TERRORISM TASK FORCE,** | ) | |
| | ) | |
| **THE COUNTY OF PRINCE WILLIAM,** | ) | |
| | ) | |
| **THE COUNTY OF ARLINGTON,** | ) | |
| | ) | |
| **VINCENT ANTIGNANO, in his** | ) | |
| **individual capacity and his official** | ) | |
| **capacity as a Detective for the Prince** | ) | |
| **William County Police Department,** | ) | |
| **and as a deputized FBI JTTF agent** | ) | |
| | ) | |
| **JASON K. BRYK, in his individual** | ) | |
| **capacity and his official capacity as a** | ) | |
| **Detective for the Arlington Police** | ) | |
| **Arlington Police Department,** | ) | |
| **and as a deputized FBI JTTF agent** | ) | |
| | ) | |
| **JOHN DOE LAW ENFORCEMENT** | ) | |
| **AGENTS Nos. 1-9, in their individual** | ) | |
| **and official capacities,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **JANE DOE LAW ENFORCEMENT** | ) | |
| **AGENT No. 1, in her individual and** | ) | |
| **official capacity.** | ) | |
| | ) | |
| **Defendants.** | ) | |

**AMENDED COMPLAINT**

COMES NOW PLANTIFF Laura Sennett ("Sennett" or "Plaintiff"), by counsel, and for her complaint against Defendants the United States Department of Justice, Attorney General Eric Holder, the Federal Bureau of Investigation Joint Terrorism Task Force, the County of Prince William, the County of Arlington, Vincent Antignano, and Jason K. Bryk (collectively, "Defendants") states as follows:

**Introduction and Summary**

1.      This is a civil action for damages to redress violations of the Privacy Protection Act of 1980, 42 U.S.C. § 2000aa *et seq*; 42 U.S.C. § 1983: for violation of the First Amendment to the United States Constitution; 42 U.S.C. § 1983: for violation of the Fourth Amendment to the United States Constitution; and common law intentional infliction of emotional distress.

2.      Plaintiff Laura Sennett ("Sennett") is a published photojournalist specializing in the coverage of demonstrations and protests.

3.      Defendants are the United States Department of Justice, Attorney General Eric Holder, the Federal Bureau of Investigation Joint Terrorism Task Force, Prince William County, Arlington County, two individual detectives who acted at the direction of these federal and local entities and under color of state and federal authority (Jason Bryk and Vincent Antignano), and approximately 9 John Doe law enforcement agents and 1 Jane Doe law enforcement agent who acted at the direction of these federal and local entities and under color of state and federal authority.

4.      On April 12, 2008, in her capacity as a photojournalist, Sennett attended, covered, and photographed protests in Washington, D.C. related to the spring meeting of the International Monetary Fund (IMF).

2

5.      Although Sennett was not a target of any criminal investigation, defendants caused a general search of her home and the wholesale seizure, retention, and conversion of Sennett's work-related equipment, including computer hardware and data, digital cameras and memory cards, a still camera, digital storage devices, and a digital voice recorder.  Defendants also seized and retained work product and documentary materials directly related to Sennett's profession as a photojournalist, including photographs, other work product, and personal belongings.

6.      Defendants' search of Sennett's home and the resulting seizures of Sennett's property, including work equipment and work product, constituted a blatant violation of the Privacy Protection Act of 1980, which strictly prohibits law enforcement officers from using search and seizure procedures to obtain work product or documentary materials from journalists -- including photojournalists -- except in narrow circumstances not applicable here.

7.      Defendants' seizure and retention of Sennett's work product, as well as the seizure and retention of computers and camera equipment used to prepare photos for publication, violated Sennett's rights under the First and Fourth Amendments. Defendants conducted an unconstitutional general search pursuant to a facially invalid warrant, issued on the basis of false and misleading information purposefully provided by Defendants.

8.      In the process of Defendants' unconstitutional search, seizure, and retention of property, Defendants converted Sennett's property, called her "un-American" among other offensive names, and trashed her home, intentionally inflicting severe humiliation and significant emotional distress upon her.

### The Parties

9.      Plaintiff Laura Sennett is a published photojournalist specializing in the coverage of demonstrations, protests, and grassroots activism.

10.      Sennett is a resident of the Commonwealth of Virginia. She resides at 1926 South Quincy Street in Arlington, Virginia.

11.      Defendant United States Department of Justice ("DOJ") is a department of the United States federal government and is the agency responsible for enforcement of federal criminal laws and domestic intelligence investigations.   The DOJ is sued in Counts I-III.

12.      Defendant Attorney General Eric Holder ("Holder") heads the United States Department of Justice and has the ultimate authority for supervising the operations and functions of the DOJ. Holder is sued in Counts I-III.

13.      Defendant Federal Bureau of Investigation Joint Terrorism Task Force ("JTTF") is an agency under the DOJ charged with taking action against acts of terrorism.  The JTTF is sued in Counts I-III.

14.      Defendant Prince William County ("PWC") is a government entity within of the Commonwealth of Virginia, and is sued in Counts I-IV. The Prince William County Police Department is the same legal entity as PWC.

15.      Defendant Arlington County is a government entity within the Commonwealth of Virginia, and is sued in Counts I-IV. Arlington Police Department is the same legal entity as Arlington County.

16.      Defendant Vincent Antignano ("Antignano") is a resident of the Commonwealth of Virginia. At all relevant times, Antignano was employed as a Detective with the Prince William County Police Department and was assigned to the JTTF's Washington Field Office as a Special Deputy United States Marshal. Antignano is sued in Counts I-IV.

17.    Defendant Jason K. Bryk ("Bryk") is a resident of the Commonwealth of Virginia.  Upon information and belief, at all relevant times Bryk was employed as a Detective with the Arlington Police Department and was a deputized FBI JTTF agent.  Bryk is sued in Counts I-IV.

18.    The John and Jane Doe defendants are unidentified law enforcement agents who, upon information and belief, were employed as law enforcement agents with the Arlington Police Department and/or the Prince Williams County Police Department, and/or were deputized FBI JTTF agents. The John and Jane Doe defendants are sued in Counts I-IV.

### Factual Allegations Common to All Counts

19.    Laura Sennett is a published photojournalist specializing in the coverage of demonstrations, protests, and grassroots activism.

20.    Sennett frequently publishes her photographs under the pseudonym "Isis."

21.    Sennett has regularly used the pseudonym "Isis" when publishing photographs since 2005.

22.    Sennett's work has been published in numerous prominent publications, including but not limited to the *Toronto Free Press*, Cable News Network ("CNN"), The History Channel, and *Radar Magazine*.

23.    Since 2005, Sennett has also published her photographs and commentary regarding a variety of social and political topics on the World Wide Web. From 2005-2006, she published photographs and commentary at her blog, http://isisimagery.blogspot.com, and since 2006, she has published her work at http://www.isisimagery.com.

24.    At all relevant times, Sennett relied upon computers, cameras, recorders, hard-drives, and digital storage devices for most aspects of her business, including but not limited to the following uses: (a) to compose, store, and prepare photographs and other graphic material for publication;

(b) to store notes, source materials, and other work product and documentary materials relating to Sennett's publications; and (c) to create and store business records including, but not limited to, correspondence, contracts, calendars, and address directories.

25.     On April 12, 2008, Sennett was present at, and took photographs at, a Washington D.C. protest of the IMF's annual spring meeting.

26.     Sennett attended the protest on April 12, 2008 in her capacity as a photojournalist, with the purpose of taking photographs of the protest and protesters for publication.

27.     On September 22, 2008, Detective Antignano of the Prince William County Police Department obtained a search warrant for Sennett's home and car from the Arlington County Circuit Court. See Search Warrant, attached as Exhibit A. He signed the warrant in his capacity as a Prince Williams County Detective. (See Exhibit A, in which affiant Antignano signs his name above the text "Detective Vincent Antignano," and in which he also adds "PWCPP" next to his signature.) Upon information and belief, Detective Antignano was, at the time he obtained the search warrant, working both as a PWC detective and as a deputized federal marshal for the FBI JTTF.

28.     The subsequent raid was executed by the FBI JTTF, presumably pursuant to a separate federal investigation not identified anywhere in the search warrant or accompanying affidavit.

29.     Defendants procured a warrant from a Virginia state court, citing two Virginia criminal statutes as the basis for the warrant. The issuance of the warrant was based on information asserted in a sworn affidavit submitted to the Arlington County Circuit Court by PWC Detective Antignano ("Antignano's Affidavit").  See Exhibit A and  Affidavit for the Search Warrant, attached as Exhibit B.

30.    Antignano's Affidavit referred to surveillance of an "unidentified white female," later identified as Sennett, "videotaping/photographing the [IMF] event as it unfolded" and refers to an unnamed "reliable source" who "advised that the unidentified white female goes by the name of 'ISIS.'" See Exhibit B.

31.    The warrant referenced alleged criminal activity in Washington D.C. by certain individuals who were wearing "masks, black hooded jackets, and sunglasses in an attempt to conceal their identities." See Exhibits A and B. Sennett was not one of those individuals, and the Affidavit does not claim that she was one of those individuals or that she was trying to conceal her identity. To the contrary, the Affidavit makes no connection between Sennett's presence in the crowd at the IMF Protest and the criminal activity which occurred at that protest, other than to state that she ran from the scene along with others after smoke-generating devices were set off. See Exhibit B. In fact the Affidavit makes clear that Sennett was *not* wearing identity-concealing clothing, noting that Sennett was wearing "dark clothing, a light colored beret, a gray and black backpack, and black combat boots." Id. Sennett's appearance at the IMF protest, including her lack of identity-concealing attire, and her use of a camera, should have prompted PWC and its employees to question whether she was a photojournalist.

32.    The Affidavit described criminal activity engaged in by unidentified masked individuals at the IMF protest, but nowhere asserted that Sennett was involved in that alleged criminal activity. Instead, the Affidavit merely states that Sennett was present at the protest *with a camera*, and that she ran when smoke-generating devices were set off in the area.

33.    In fact, Sennett was not involved in any alleged criminal activity. She was there as a photojournalist, to capture images of the protest for publication.

34.     Antignano's Affidavit stated that law enforcement searched for information on Sennett on "open source websites," such as Google and YouTube, and conducted other research regarding Sennett's identity and background. Id.  Based on this detailed research, combined with the fact that Defendants knew Sennett used the name "Isis," Defendants certainly knew that Sennett was a photojournalist, and that she specialized in photographing protests.

35.     On September 23, 2008, approximately a dozen armed individuals ("Agents"), including Detectives Bryk and Antignano and approximately ten other unidentified law enforcement agents, raided Sennett's home in Arlington, Virginia.  The Agents, some wearing clothing indicating "FBI," searched Sennett, Sennett's son, and Sennett's home. They tore her house apart during the search, leaving it completely trashed when they departed.

36.     During the search of Sennett, her son, and her home on September 23, 2008, the Agents seized approximately 26 items, including, but not limited to, an external hard-drive containing more than seven- thousand (7,000) photos, two computers, several cameras, and several camera memory cards.

37.     The materials seized by the Agents constituted Sennett's entire stock of digital photographs, including all of her professional work product and nearly all of the equipment she needed in order to maintain her profession as a photojournalist.

38.     Despite repeated requests to do so, Defendants have refused to return any of the seized materials to Sennett.

39.     As a result of Defendant's refusal to return Sennett's seized work equipment and work product, Sennett has been unable to continue with or maintain her profession as a photojournalist.

40.     No criminal charges have been filed against Sennett in connection with the search and seizure which forms the basis for the claims herein.

41.     Sennett was never arrested in connection with the search and seizure which forms the basis for the claims herein.

42.     Upon information and belief, Sennett was never suspected of involvement in the alleged criminal activity which occurred at the IMF protest. Rather, it appears that her home and privacy were invaded, her ability to make a living destroyed, and her life turned upside down by the Defendants in pursuit of photographs or other information which Sennett may have possessed, not as a result of any suspected criminal activity, but rather as a result of her occupation as a photojournalist.

43.     Sennett has suffered extreme humiliation and severe mental and emotional distress as a result of the Defendants' actions.

### COUNT I—VIOLATION OF THE PRIVACY PROTECTION ACT OF 1980, 42 U.S.C. § 2000aa
### Against the United States Department of Justice, Holder, JTTF, Prince William County, Arlington County, Antignano, Bryk, John and Jane Does

44.     The Plaintiff restates and incorporates paragraphs 1-43 as if set forth fully herein.

45.     At all relevant times, Sennett, doing business as a photojournalist under the pseudonym "Isis," was engaged in activity "reasonably believed to have a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication, in or affecting interstate or foreign commerce" within the meaning of 42 U.S.C. § 2000aa(a) and (b).

46.     Defendants submitted an application and affidavit for a warrant to search the home of Sennett and to seize work product equipment and materials therefrom which violated 42 U.S.C. § 2000aa.

47.     All of the Defendants knew or should have known that Sennett was a photojournalist prior to the issuance of the warrant.

48.     Antignano's Affidavit, however, intentionally omitted any mention that Sennett was a photojournalist, let alone that she was a person "reasonably believed to have a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication, in or affecting interstate or foreign commerce" within the meaning of 42 U.S.C. § 2000aa(a) and (b).

49.     Antignano's Affidavit admitted that Defendants knew Sennett went by the name "Isis," that Defendants searched the Internet for information on Sennett, and that Sennett was seen videotaping/photographing the IMF protest.

50.     During the raid on Sennett's home, at least three Agents, including Antignano, Bryk, and an unidentified Agent, told Sennett that they knew she was a photojournalist.

51.     John Doe 1, an unidentified male Agent, explicitly told Sennett that he had seen published photographs that she took of a protest of the Republican National Convention.  These pictures were published in several media outlets.

52.     Antignano's Affidavit failed to state any connection between Sennett and the violent events that occurred at the IMF protest other than Sennett's mere presence at the event, and the fact that Sennett ran away with others in the crowd after smoke-generating pyrotechnic devices were set off.

53.     Although he knew that Sennett was a known photojournalist who specialized in photographing protests, Antignano failed to state this in his Affidavit.

54.     Although he knew that the materials to be seized from Sennett constituted work product materials and documentary materials created and maintained in connection with a purpose to

10

disseminate to the public a newspaper, book, broadcast, or other similar form of public communication, in or affecting interstate or foreign commerce, Antignano failed to state this in his Affidavit.

55.    Antignano's Affidavit failed to establish that any of the exceptions to the statutory prohibition of searches and seizures set out in 42 U.S.C. § 2000aa(a) and (b) existed. In fact, because Antignano intentionally withheld from the Magistrate the critical information that Sennett was a photojournalist, the Magistrate was not even provided the option of questioning or determining whether any of the Privacy Protection Act exceptions applied. The Affidavit therefore was materially false and misleading, and was submitted by Defendants with knowledge of its false and misleading nature or with reckless disregard for its truth or falsity.

56.    Upon information and belief, Sennett was never suspected of involvement in the alleged criminal activity which occurred at the IMF protest. Rather, it appears that Defendants sought photographs or other information which Sennett may have possessed, not as a result of any suspected criminal activity, but rather as a result of her occupation as a photojournalist. This is precisely the kind of government action that the Privacy Protection Act of 1980 was designed to prevent. Defendant Arlington County issued the warrant pursuant to which its employee, Defendant Bryk, effectuated an unlawful search and seizure in violation of 42 U.S.C. § 2000aa(a) and (b).

57.    Defendant Bryk, acting as an Arlington County employee, and under the supervision of the DOJ and the FBI JTTF, and under color of federal and state law, raided Sennett's home although he knew her to be a photojournalist.  Bryk acted with knowledge that the search and seizure were pursuant to an invalid warrant and was in violation of 42 U.S.C. § 2000aa(a) and (b), and acted with intent to violate, or with reckless indifference to, the protections provided to

Sennett pursuant to 42 U.S.C. § 2000aa(a) and (b). Subsequent to the illegal search and seizure, Defendant Bryk also questioned Sennett at the Arlington County Police Department.

58.    Defendant Arlington County is liable under *respondeat superior* as Defendant Bryk was an Arlington County employee acting within the scope of his employment when he participated in the raid of Sennett's house pursuant to the invalid search warrant, and when he questioned Sennett after the raid.

59.    The John and Jane Doe defendants acting as Arlington County and/or PWC employees, and under the supervision of the DOJ and the FBI JTTF, and under color of federal and state law, raided Sennett's home although they knew her to be a photojournalist.  The John and Jane Doe defendants acted with knowledge that the search and seizure were pursuant to an invalid warrant and was in violation of 42 U.S.C. § 2000aa(a) and (b), and acted with intent to violate, or with reckless indifference to, the protections provided to Sennett pursuant to 42 U.S.C. § 2000aa(a) and (b).

60.    Defendants Arlington County and/or Prince William County are liable under *respondeat superior* as the John and Jane Doe defendants were Arlington County and/or Prince William County employees acting within the scope of their employment when they participated in the raid of Sennett's house pursuant to the invalid search warrant.

61.    Defendant Antignano, acting as a PWC employee, and under the supervision of the DOJ and the FBI JTTF, and under color of federal and state law, acted with intent to violate, or with reckless indifference to, the protections provided to Sennett pursuant to 42 U.S.C. § 2000aa(a) and (b), by omitting material information about Sennett's profession as a photojournalist from his search warrant Affidavit.

62.    Also acting as a PWC employee, and under the supervision of the DOJ and the FBI JTTF, and under color of federal and state law, Antignano executed what he knew to be an invalid warrant and led the raid on Sennett's home with more than ten Agents with full knowledge of the illegality of the search. Antignano knew or should have known that Sennett was a photojournalist specializing in covering protests, that he had improperly obtained the search warrant, and that the search warrant was not supported by probable cause.

63.    Defendant PWC is liable under *respondeat superior* as Defendant Antignano was a PWC employee acting within the scope of his employment when he intentionally omitted material information from an affidavit in support of a search warrant.

64.    Defendants DOJ, Holder, and FBI JTTF are liable as the *de facto*, joint, or actual employers of Antignano, Bryk, and the John Doe and Jane Doe defendants who were acting within the scope of their employment as deputized federal marshals when they procured and executed what they knew to be a facially invalid warrant unsupported by probable cause and procured by means of a false and materially misleading affidavit.

65.    Defendants Antignano, Bryk, and the John Doe and Jane Doe defendants, acting as employees of PWC and/or Arlington County, and under the supervision of the DOJ and the FBI JTTF, seized Sennett's property in violation of her rights as a photojournalist under 42 U.S.C. § 2000aa(a) and (b).

66.    Defendants knew, or reasonably should have known, that their conduct violated Plaintiff's right to protection from such searches and seizures as set out in 42 U.S.C. § 2000aa(a) and (b).

67.    Defendants acted with intent to violate, or with reckless indifference to, the protections provided to Sennett as a photojournalist pursuant to 42 U.S.C. § 2000aa(a) and (b).

68.     Defendants caused the September 23, 2008 search of Sennett and her home and seizure of work product and documentary materials therefrom in violation of the Privacy Protection Act of 1980.

69.     Defendants' seizure of Sennett's computers, camera equipment, photographs, digital storage devices, and other work product, and their subsequent failure to return Sennett's property, halted Sennett's publishing and journalistic activities.

70.     Defendant Holder acted in concert with federal agents under color of federal office.

71.     The Defendants are liable to Plaintiff for damages, attorney's fees, and costs caused by Defendants' conduct.

72.     By reason of the unlawful search and seizure of Sennett's publishing materials and journalist work product, Sennett, individually and doing business as a photojournalist under the pseudonym "Isis," has suffered significant damages, including but not limited to lost income, loss of business and professional reputation, and severe humiliation and emotional distress.

### (IN THE ALTERNATIVE)  COUNT II—VIOLATION § 1983: BREACH OF PLAINTIFF'S FOURTH AMENDMENT RIGHTS
### Against the United States Department of Justice, Holder, JTTF, Prince William County, Arlington County, Antignano, and Bryk

73.     The Plaintiff restates and incorporates paragraphs 1-72 as if set forth fully herein.

74.     If Sennett's claim under the Privacy Protection Act of 1980 should fail, Sennett asserts, in the alternative, a claim under 42 U.S.C. § 1983 for violation of her Fourth Amendment right to be free from unlawful searches and seizures.

75.     Defendants violated Plaintiff's right to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment to the United States Constitution.

76.    Plaintiff had a reasonable expectation of privacy in her home and business premises and in all of her journalistic work product, records, and documents kept there, including all data and photographs stored in her computers, hard-drives, and memory disks.

77.    Defendants Antignano, Bryk, and the John and Jane Doe defendants acted as law enforcement agents under color of federal and state law.

78.    Defendants Bryk, Antignano, and the John and Jane Doe defendants' search of Sennett and her home, and seizure of materials therefrom, was a general search.

79.    Defendants Bryk, Antignano, and the John and Jane Doe defendants' search of Sennett and her home, and seizure of materials therefrom, was conducted without probable cause to believe that evidence of criminal activity would be found at Plaintiff's home.

80.    Defendants Bryk, Antignano, and the John and Jane Doe defendants' search of Sennett and her home, and seizure of materials therefrom, was based on information that was not shown to be current or updated.

81.    Antignano's Affidavit was materially false and misleading, and submitted by Defendants with knowledge of its false and misleading nature or with reckless disregard for its truth of falsity.

82.    Defendants Bryk, Antignano, and the John and Jane Doe defendants' knew, or reasonably should have known, that their conduct violated Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures.

83.    Defendants Bryk, Antignano, and the John and Jane Doe defendants' acted with intent to violate, or with reckless indifference to, Sennett's Fourth Amendment right to be free from unreasonable searches and seizures.

84.     Defendant Arlington County has responsibility for the policies and procedures of the detectives who work for the Arlington Police Department.

85.     The violation of Sennett's Fourth Amendment rights by Defendants Bryk and the John and Jane Doe defendants employed by Arlington County was a result of the affirmative policies and procedures of the Arlington Police Department, or its failure to adequately provide polices and procedures. This includes, but is not limited to a policy of rubber-stamping warrant requests and a policy of utilizing affidavits that omit material facts in order to obtain search warrants. It also includes, but is not limited to, a policy not to require proper inquiry into requests for search warrants and their supporting affidavits, and failure to have a policy requiring that affidavits supporting search warrants include all material facts.

86.     Defendant PWC has responsibility for the policies and procedures of the detectives who work for the Prince PWC Police Department.

87.     The violation of Sennett's Fourth Amendment rights by Defendants Antignano and the John and Jane Doe defendants employed by PWC was a result of the affirmative policies and procedures of the PWC Police Department, or its failure to adequately provide polices and procedures. This includes, but is not limited to a policy of rubber-stamping warrant requests and a policy of utilizing affidavits that omit material facts in order to obtain search warrants. It also includes, but is not limited to, a policy not to require proper inquiry into requests for search warrants and their supporting affidavits, and failure to have a policy requiring that affidavits supporting search warrants include all material facts.

88.     Defendants DOJ and FBI JTTF are liable for the actions of their Agents who effected the illegal search and seizure in violation of Sennett's Fourth Amendment Rights.

89.     Defendant Holder acted in concert with federal agents under color of federal office.

90.     The Defendants are liable to Plaintiff for damages, attorney's fees and costs caused by Defendants' conduct.

91.     By reason of Defendants' unconstitutional search and seizure, Plaintiff suffered damages including, but not limited to, lost income, loss of business and professional reputation, and emotional distress.

92.     The conduct of the Defendants evidenced an intent to willfully and intentionally violate Plaintiff's Fourth Amendment right to be free of unreasonable searches and seizures, or, at the least, showed a reckless indifference to Sennett's Fourth Amendment rights.

**(IN THE ALTERNATIVE) COUNT III—VIOLATION OF § 1983: BREACH OF PLAINTIFF'S FIRST AMENDMENT RIGHTS**
**Against the United States Department of Justice, Holder, JTTF,**
**Prince William County, Arlington County, Antignano, and Bryk**

93.     The Plaintiff restates and incorporates paragraphs 1-92 as if set forth fully herein.

94.     If Sennett's claim under the Privacy Protection Act of 1980 should fail, Sennett asserts, in the alternative, a claim under 42 U.S.C. § 1983 for violation of her First Amendment rights to freedom of speech, freedom of the press, and freedom of association as guaranteed by the First Amendment.

95.     At all relevant times, Plaintiff was employed as a freelance photojournalist. In her capacity as a photojournalist, Sennett took photographs of newsworthy events and published her photographs in print, online, and other media. These activities are protected by the First Amendment.

96.     At all relevant times, Plaintiff used computers and camera equipment to publish her photography as her source of income and profession. Defendants' unlawful search of Sennett and her home, and the seizure, and retention of Sennett's work product prevented Sennett from

17

creating and publishing her work, and therefore constituted a prior restraint in violation of Plaintiff's First Amendment rights of freedom of speech and of the press.

97.    Defendants' seizure and retention of cameras, computer hardware, and software used by Plaintiff to create and publish her photographs and work product violated her rights to freedom of speech, of the press, and of association.

98.    Defendants knew or reasonably should have known that their conduct violated Plaintiff's clearly established First Amendment rights of freedom of speech, freedom of the press, and freedom of association.

99.    Defendants acted with intent to violate, or with reckless indifference to, Plaintiff's First Amendment rights to freedom of speech, freedom of the press, and freedom of association.

100.    Defendants Antignano, Bryk, and the John and Jane Doe defendants acted as law enforcement agents and agents of the JTTF, under color of federal and state law.

101.    Defendant Arlington County has responsibility for the policies and procedures of the detectives who work for the Arlington Police Department.

102.    The violation of Sennett's First Amendment rights by Defendants Bryk and the John and Jane Doe defendants employed by Arlington County was a result of the affirmative policies and procedures of the Arlington Police Department, or its failure to adequately provide polices and procedures. This includes, but is not limited to a policy of rubber-stamping warrant requests and a policy of utilizing affidavits that omit material facts in order to obtain search warrants. It also includes, but is not limited to, a policy not to require proper inquiry into requests for search warrants and their supporting affidavits, and failure to have a policy requiring that affidavits supporting search warrants include all material facts.

103.    Defendant PWC has responsibility for the policies and procedures of the detectives who work for the Prince William County Police Department.

104.    The violation of Sennett's Fourth Amendment rights by Defendants Antignano and the John and Jane Doe defendants employed by PWC was a result of the affirmative policies and procedures of the PWC Police Department, or its failure to adequately provide polices and procedures. This includes, but is not limited to a policy of rubber-stamping warrant requests and a policy of utilizing affidavits that omit material facts in order to obtain search warrants. It also includes, but is not limited to, a policy not to require proper inquiry into requests for search warrants and their supporting affidavits, and failure to have a policy requiring that affidavits supporting search warrants include all material facts.

105.    Defendant Holder acted in concert with federal agents under color of federal office.

106.    The Defendants are liable to Plaintiff for damages, attorney's fees and costs caused by Defendants' conduct.

107.    By reason of Defendants' violation of Sennett's First Amendment rights, Plaintiff has suffered damages including, but not limited to, lost income, loss of business and professional reputation, and emotional distress.

108.    The conduct of Defendants evidenced an intent to violate Plaintiff's First Amendment rights of freedom of speech, freedom of the press, and freedom of association, or at the very least, demonstrated a reckless indifference to these rights.

### (IN THE ALTERNATIVE) COUNT IV— INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### Against Prince William County, Arlington County, Antignano, Bryk, and the John and Jane Doe Defendants

109.    The Plaintiff restates and incorporates paragraphs 1-108 as if set forth fully herein.

110.    If Sennett's claim under the Privacy Protection Act of 1980 should fail, Sennett asserts, in the alternative, a claim for intentional infliction of emotional distress.

111.    Defendants Antignano, Bryk, and the John and Jane Doe defendants intentionally and deliberately inflicted extreme emotional distress on Sennett by leading a raid on her house without warning and pursuant to an invalid search warrant.

112.    Defendants Antignano, Bryk, and the John and Jane Doe defendants' conduct was outrageous and extreme, beyond all bounds of common decency. Society cannot tolerate a group of law enforcement officers raiding an innocent individual's home, seizing all materials required for the individual to make a living, insulting the individual, seizing materials belonging to the individuals' child, and trashing an individual's home, all without warning, without probable cause, and without constitutional justification. This is especially the case when a journalist is targeted, not because of any involvement in criminal activity, but rather because of her journalistic activities.

113.    Defendants Prince William County and Arlington County are liable under *respondeat superior* as Defendants Antignano, Bryk, and the John and Jane Doe defendants were acting within the course of their employment with those counties when they raided Sennett's home. These defendants' outrageous actions caused severe emotional distress to Sennett. This emotional distress was severe and beyond the limits of what individuals may reasonably be expected to bear in civilized society.

**PRAYER FOR RELIEF**

Plaintiff prays for the following relief:

a.   Injunctive relief compelling Defendants to return all of Sennett's property;

b.   Compensatory damages in the amount of $250,000;

c.   Punitive damages in the amount of $1,000,000;

d.   Reasonable attorney's fees, costs, and expenses.

WHEREFORE, Plaintiff prays for judgment in her favor and against the Defendants as stated in each Count, along with an award of injunctive relief and damages as stated in her Prayer for Relief, her attorney's fees and costs related to this action, and all other such relief to which Plaintiff may be justly entitled.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES.**

Respectfully submitted,

LAURA SENNETT

By: _____/s/_____
        Thomas M. Wolf, Esq. (VSB 18234)
        Lisa J. Chadderdon, Esq. (VSB 72812)
        LeClairRyan
        951 East Byrd Street, 8th Floor
        Richmond, Virginia 23219
        Phone:  804-783-2003
        Fax:  804-783-2294
        Tom.Wolf@LeClairRyan.com
        Lisa.Chadderdon@LeClairRyan.com

        *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of January, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will then send a notification of such filing (NEF) to the following:

Eric Holder
Attorney General of the United States
U.S. Department of Justice
Office of the Attorney General
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001
***Counsel for U.S. Department of Justice, Eric Holder  and
The Federal Bureau of Investigation Joint Terrorism Task Force***

Ara L. Tramblian, Deputy County Attorney
Office of County Attorney
2100 Clarendon Blvd., Suite 403
Arlington, Virginia  22201
***Counsel for County of Arlington and Detective Jason K. Bryk***

M. Alice Rowan
Assistant County Attorney
Prince William County
1 County Complex Court
Prince William, Virginia  22102
***Counsel for Prince William County***

R. Joseph Sher
Assistant United States Attorney
2100 Jamieson Ave.
Alexandria, Virginia  22314
***Counsel for Detective Vincent Antignano***

_____/s/_____
Thomas M. Wolf (Va. Bar No. 18234)
Lisa J. Chadderdon (Va. Bar No. 72812)
LeClairRyan, A Professional Corporation
951 E. Byrd Street, 8th Fl.
Richmond, Virginia  23219
Telephone: (703) 783-2003
Facsimile:  (703) 783-2294
Thomas.Wolf@leclairryan.com
Lisa.Chadderdon@leclairryan.com
***Counsel for Laura Sennett***

22