IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| LAURA SENNETT | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:09-cv-1063 |
| | ) | |
| UNITED STATES DEPARTMENT | ) | |
| OF JUSTICE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT BY DEFENDANTS PRINCE WILLIAM COUNTY
AND PRINCE WILLIAM COUNTY POLICE DEPARTMENT**

Laura Sennett ("Sennett"), by counsel, respectfully submits this Memorandum in Opposition to Defendant Prince William County's ("PWC") Motion to Dismiss Counts II-IV in Sennett's Amended Complaint. For the reasons set forth below, Sennett requests that this Court deny PWC's Motion as to Counts II-III.

I.  **INTRODUCTION**

This Court should deny PWC's Motion to Dismiss Counts II and III because: (1) Sennett has pled specific facts in support of her claims in Counts II and III for which relief may be granted and not mere conclusory allegations; (2) the facts presented in the Amended Complaint serve to show that Detective Antignano was acting under his authority as a PWC detective when he knowingly filed the misleading affidavit ("Antignano's Affidavit") to procure a search warrant for Sennett's home and not simply under federal color; and (3) while a single incident cannot establish existence of a policy or custom, it is enough to survive a Motion to Dismiss, and furthermore, the nature of the incident supports a likelihood of a PWC policy or custom of rubber-stamping warrant requests, of utilizing affidavits that omit material facts in order to

obtain search warrants, of not requiring proper inquiry into requests for search warrants and supporting affidavits, and/or a failure to have a policy requiring that affidavits supporting search warrants include all material facts.

## II.  FACTS

Sennett is a published photojournalist, specializing in the coverage of demonstrations, protests, and grassroots activism, who, since 2005, frequently publishes her photographs under the pseudonym "Isis."  *See* Amended Complaint at ¶¶ 19, 21, 23.  Sennett's work has been published in numerous prominent publications, including but not limited to the *Toronto Free Press*, Cable News Network ("CNN"), The History Channel, and *Radar Magazine*.  *See* Amended Complaint at ¶ 22.

On April 12, 2008, in her capacity as a photojournalist, Sennett attended, covered, and photographed a protest of the International Monetary Fund's annual spring meeting in Washington, D.C. with the purpose of taking photographs of the protest and protesters for publication.  *See* Amended Complaint at ¶¶ 25-26.

On September 23, 2008, Detective Vincent Antignano ("Antignano") of the PWC Police Department, Detective Jason Bryk ("Bryk") of the Arlington County Police Department, and approximately 10 other unknown officers of the PWC and Arlington County Police Departments ("Agents") raided Sennett's home in Arlington, Virginia. .  *See* Amended Complaint at ¶ 35. They tore her house apart during the search, leaving it completely trashed when they departed. *Id*.  Not only did the Agents invade Sennett's privacy, but they destroyed her ability to make a living, seizing her work product in the form of more than seven-thousand (7,000) photos, two computers, several cameras, and camera equipment among other things.  *See* Amended Complaint at ¶ 36.  During the raid, at least three Agents, including Antignano and Bryk, told

Sennett that they knew she was a photojournalist. *See* Amended Complaint at ¶ 50. One of the agents even told Sennett that he had seen some of her published photographs of the Republican National Convention, which were published in several media outlets. *See* Amended Complaint at ¶ 50.

The raid on Sennett's house was conducted presumably pursuant to a warrant based on the affidavit of a PWC detective describing alleged criminal activity in Washington, D.C., procured from the Arlington County Circuit Court, citing two Virginia criminal statutes. *See* Amended Complaint Exhibits A and B. The issuance of the warrant was based on information asserted in a sworn affidavit submitted to the Arlington County Circuit Court by PWC Detective Antignano ("Affidavit"). *See* Amended Complaint Exhibit B. Antignano signed the warrant in his capacity as a PWC Detective *See* Complaint, Exhibit A (in which affiant Antignano signs his name above the text "Detective Vincent Antignano," adding "PWCPD" next to his signature.) Antignano's Affidavit referenced alleged criminal activity in Washington, D.C., although the warrant cites Virginia criminal statutes, by individuals in identity-concealing attire. *Id*. The affidavit does *not* assert that Sennett was involved in the criminal activity that occurred; in fact, it makes clear that Sennett was not wearing identity-concealing attire like the individuals involved in the alleged criminal activity and notes that she was videotaping/photographing the events. *Id*. Furthermore, Antignano's Affidavit admitted that he knew Sennett went by the name "Isis" and had performed Internet searches for information on Sennett. *Id*. Such searches would reveal that Sennett was a photojournalist who specialized in photographing protests. Although he admittedly knew that Sennett was a known photojournalist specializing in photographing protests, Antignano failed to state this in his Affidavit.

No criminal charges have been filed against Sennett in connection with the September 23, 2008, search and seizure. *See* Amended Complaint at ¶ 40. The materials seized by the Agents constituted Sennett's entire stock of digital photographs, including all of her professional work product and nearly all of the equipment she needed in order to maintain her profession as a photojournalist. *See* Amended Complaint at ¶ 37. Despite repeated requests to do so, Defendants have refused to return any of the seized materials. *See* Amended Complaint at ¶ 38. As a result of Defendant's refusal to return Sennett's seized work equipment and work product, Sennett has been unable to continue with or maintain her profession as a photojournalist. *See* Amended Complaint at ¶ 39.

### III.  STANDARD OF REVIEW

In considering a motion to dismiss, the Court should assume the veracity of well-pleaded factual allegations and determine whether they plausibly give rise to an entitlement of relief. *Ashcroft v. Iqbal*, 556 U.S. __, 129 S. Ct. 1937, 1950 (2009). Moreover, the complaint is to be construed liberally construed in favor of the plaintiff and assessed in light of Rule 8's liberal pleading standards. *Harrison v. Prince William County Police Dep't*, 640 F. Supp. 2d 688, 699 (E.D. Va. 2009) (citing *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969)). A claim is plausible on its face when the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Likewise, a complaint will fail if it only tenders "'naked assertion[s] devoid of 'further factual enhancements.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

Thus, the plaintiff's Amended Complaint should be dismissed only if Defendant PWC can show that the plaintiff has pled no facts in support of her claims. Here the defendant has not met this burden.

### IV. ARGUMENT AS TO COUNTS II AND III (42 U.S.C. Section 1983)

#### A. Sennett has Pled Specific Facts that Support Her Claims Under 42 U.S.C. § 1983 that PWC Violated her First and Fourth Amendment Rights.

Count II is a claim under 42 U.S.C. § 1983 for violation of Sennett's Fourth Amendment right to be free from unlawful searches and seizures. Count III is a claim under 42 U.S.C. § 1983 for violation of Sennett's First Amendment rights to freedom of speech, freedom of the press, and freedom of association.

Municipal entities, including counties, "do not enjoy absolute immunity under the Eleventh Amendment," *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 398 (4th Cir. 1990), but may be sued under § 1983 for violating a person's constitutional rights where the violation results from a "municipal policy or custom." *Springfield v. Kibbe*, 480 U.S. 257, 267 (1987), *see generally Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658 (1978). While a municipal policy is most readily found in its ordinances and regulations, "it may also be found in formal or informal ad hoc 'policy' choices or decisions of municipal officials authorized to make and implement municipal policy." *Spell v. McDaniel*, 824 F.2d 1280, 1385 (4th Cir. 1987). Municipal custom or usage may also serve as a basis for the imposition of municipal liability and the existence of such a custom "may be found in 'persistent and widespread . . . practice of [municipal] officials [which] although not authorized by written law, [are] so permanent and well settled as to [have] the force of law." *Gedrich v. Fairfax County Dep't of Family Servs.*, 282 F. Supp. 2d 439, 472 (E.D. Va. 2003) (citing *Spell*, 824 F.2d at 1386).

The claims in Counts II and III are based on PWC's (as it has responsibility for the policies and procedures of the detectives of PWC Police Department) affirmative polices, procedures, and customs or its failure to adequately provide policies and procedures. This includes but is not limited to a policy of rubber-stamping warrant requests, a policy of utilizing affidavits that omit material facts in order to obtain search warrants, a policy not to require proper inquiry into requests for search warrants and their supporting affidavits, and failure to have a policy requiring that affidavits supporting search warrants include all materials.

In her Amended Complaint, Sennett affirms that Antignano stated during the September 23, 2008 raid that he knew that she was a photojournalist. *See* Amended Complaint at ¶ 50. Additionally, Antignano admits in his affidavit that he knew that Sennett goes by the name "Isis," that she was present at a number of other protests with a camera, and that Internet searches, including Google and Yahoo, were performed of Sennett. *See* Amended Complaint Exhibit B. These Internet searches would have revealed Sennett's blog maintained under the name Antignano knew her by at this point, "Isis," which shows her to be a photojournalist. No where in Antignano's affidavit does he state that Sennett was on April 12, 2008, or at any other time, involved in any criminal activity associated with any of these protests. More importantly, no where in Antignano's affidavit does he state that Sennett was a photojournalist, knowingly omitting material evidence that would make such a warrant invalid. Additionally, Antignano, under his authority as a PWC detective, signs that warrant which cites violations of two Virginia state laws, despite knowing that the alleged criminal activity described in his affidavit took place in Washington, D.C. *See* Amended Complaint Exhibit A.

As a result of these material omissions and misstatements, Sennett suffered through a dozen PWC and Arlington County officers trashing her house and seizing nearly all of her work product, computers, cameras, and equipment.

### B. Facts Show Antignano Was Acting As a PWC Police Detective.

Defendant PWC argues that the allegations in the Amended Complaint do not demonstrate a policy, custom or practice, but rather the "discretionary act of one officer." *See* Def's Memo. at pg. 6. Defendant PWC argues that these allegations do now show that PWC knew about Antignano's actions in Arlington, that PWC "cannot control the actions of an officer operating in another jurisdiction," and that any alleged actions taken by Antignano must have been taken under color of federal law. *See* Def's Memo. at pg. 7.

Antignano stated in his affidavit that is PWC police detective assigned to the FBI Joint Terrorism Task Force, presumably through his status as a PWC police detective. *See* Amended Complaint Exhibit B. He notes that he received training through the PWC Criminal Justice Academy in addition to the FBI Joint Terrorism Task Force and the FBI Academy. *Id*. Finally, Antignano signs the search warrant above his name listed as "Detective Vincent Antignano" and notes "PWCPD" next to his name. *See* Amended Complaint Exhibit A. This is sufficient to conclude that Antignano was acting under his authority as a PWC police detective.

These facts dispute Defendants argument that Antignano "must have been" acting under color of federal law. *See* Def's Memo. at pg. 7. Defendants seem to argue that Antignano can take off his "local officer hat" and put on his "federal officer hat" when in reality, the FBI Joint Terrorism Task Force (JTTF) is simply a law enforcement *task force* comprised of the FBI and other federal, state, and local law enforcement agencies that investigate crimes involving international and domestic terrorism. *United States v. Ford*, 550 F.3d 975, 977 n.2 (2008). The

task force allows certain local law enforcement officers to become involved in federal investigations – i.e., to wear two hats at once. A member of the JTTF is only assigned to the task force by virtue of his status as law enforcement officer, and therefore, he presumably cannot act solely under the color of the JTTF.

Defendant's additionally argue that Antignano was acting outside of PWC Police Department's jurisdiction, and therefore they had no control over his actions. *See* Def's Memo. at pg. 7. This is irrelevant to the determination of whether or not PWC had a policy or custom in place of allowing PWC detectives to obtain search warrants in other counties under their authority as a PWC detective, to utilize affidavits that omit material facts in order to obtain search warrants, or whether PWC fails to have a policy requiring that affidavits submitted by PWC detectives supporting search warrants include all material facts and training those detectives in such policies.

### C. PWC Detective Antignano's Disregard for Sennett's Rights Tends to Show a Likelihood of a PWC Custom or Policy that Violates § 1983.

Defendants argue that a single incident cannot establish the existence of a policy or custom. *See* Def's Memo. at pg. 7. The Fourth Circuit has found an argument such as the defendants, that an isolated incident is insufficient to prove the existence of an official policy or custom, is "premature . . . and thus unpersuasive" on a motion to dismiss. *Gedrich v. Fairfax County Dep't of Family Servs.*, 282 F. Supp. 2d 439, 472 (E.D. Va. 2003) (citing *Jordan v. Jackson*, 15 F.3d 333, 337 (4th Cir. 1994)).

The Fourth Circuit has held that to withstand a motion to dismiss under Rule 12(b)(6), plaintiffs must allege *no more* than one incident of misconduct, which Sennett has done. *Id.* (emphasis added). Plaintiff need not detail the facts underlying their claims or plead the multiple incidents of constitutional violation necessary at later stages to establish the existence of an

official policy or custom and causation. *Id.* She must only comply with the "usual requirements of notice pleading specified by the Federal Rules." *Id*. (citing Jordan, 15 F.3d at 339 n.24).

Sennett has adequately complied with requirements of notice pleading and sufficiently alleged one incident of misconduct by Defendant PWC in its detective's procurement of a search warrant based on knowingly material omissions. Given the nature of this incident, it is likely that similar incidents exist; however, likelihood is not even required at this stage.[1]

## V. CONCLUSION

PWC's affirmative policies, procedures, and customs, or its failure to adequately provide policies and procedures, caused one of its own detectives to procure a warrant under his authority as a PWC detective by knowingly omitting material facts in his affidavit, and executing that search warrant that he and others knew or should have known to be unreasonable.

For the foregoing reasons, Sennett respectfully requests this Court to deny Defendant PWC's Motion to Dismiss Counts II-III in Sennett's Amended Complaint.

Respectfully submitted,

LAURA SENNETT

By: _____/s/_____
Thomas M. Wolf, Esq. (VSB 18234)
LeClairRyan
951 East Byrd Street, 8th Floor
Richmond, Virginia 23219
Phone: 804-783-2003
Fax: 804-783-2294
Tom.Wolf@LeClairRyan.com

---

[1] Plaintiff has not addressed herein the argument regarding Count IV because she has simultaneously moved to dismiss that count under Rule 41(a)(2).

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of February, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will then send a notification of such filing (NEF) to the following:

Eric Holder
Attorney General of the United States
U.S. Department of Justice
Office of the Attorney General
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001
*Counsel for U.S. Department of Justice, Eric Holder and*
*The Federal Bureau of Investigation Joint Terrorism Task Force*

Ara L. Tramblian, Deputy County Attorney
Office of County Attorney
2100 Clarendon Blvd., Suite 403
Arlington, Virginia 22201
*Counsel for County of Arlington and Detective Jason K. Bryk*

M. Alice Rowan
Assistant County Attorney
Prince William County
1 County Complex Court
Prince William, Virginia 22102
*Counsel for Prince William County*

R. Joseph Sher
Assistant United States Attorney
2100 Jamieson Ave.
Alexandria, Virginia 22314
*Counsel for Detective Vincent Antignano*

_____/s/_____
Thomas M. Wolf (Va. Bar No. 18234)
LeClairRyan, A Professional Corporation
951 E. Byrd Street, 8th Fl.
Richmond, Virginia 23219
Telephone: (703) 783-2003
Facsimile: (703) 783-2294
Thomas.Wolf@leclairryan.com